UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN MATIAS TORRES,<br><br>    Petitioner,<br><br>v.<br><br>RALPH M. DIAZ, Warden,<br><br>    Respondent. | Case No. 12-cv-06224-YGR (PR)<br><br>**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS NEW CLAIMS IN AMENDED PETITION AS UNTIMELY** |

    Petitioner Juan Matias Torres, a state prisoner currently incarcerated at California State Prison-Solano ("CSP-Solano"), filed the instant *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Thereafter, Petitioner filed his amended petition, which is the operative petition in this action. Dkt. 59.

    Before the Court is Respondent's motion to dismiss new claims in his amended petition as untimely under the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d). Dkt. 65.

    Also before the Court is Petitioner's filing entitled, "Motion for Request for Update and Case Inquiry and Request for Extension of Time to Reply to Any Court Orders or Motions Filed, If Necessary." Dkt. 73. In this aforementioned motion, Petitioner explains that he was unable to notify the Court about his temporary transfer out of CSP-Solano from March 22, 2017 through April 20, 2017. *Id.* at 1-2.[1] He requests an update and copies of any orders or motions that were filed during his transfer. *Id.* at 2. He also requests for an extension of time to respond to such orders and motions. *Id.* Because there were no orders or motions filed during the time frame Petitioner was transferred, the Court DENIES his motion as unnecessary. Dkt. 73.

    Having read and considered the papers submitted and being fully informed, the Court GRANTS Respondent's motion to dismiss.

---

    [1] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

## I. BACKGROUND

On August 11, 2006, in Santa Clara County Superior Court case number CC591335, the prosecution charged Petitioner with assault on a peace officer with a deadly weapon, exhibition of a deadly weapon with intent to resist arrest, evading a peace officer, driving under the influence, driving with .08 percent or more blood alcohol, resisting or delaying a peace officer, carrying a concealed dirk or dagger, and resisting an executive officer. Resp't Ex. 1A at 106-111. The prosecution further alleged two prior prison term convictions, two serious felony convictions, two prior "strike" convictions, and a prior conviction for driving under the influence. *Id.* at 106-113.

On February 23, 2007, in Santa Clara County Superior Court case number CC629776, the prosecution charged Petitioner with two counts of assault with a deadly weapon and one count of resisting or delaying a peace officer. Resp't Ex. 1B at 323-325. The prosecution further alleged great bodily injury enhancements, two prior serious felony convictions, two prior "strike" convictions, and an on-bail enhancement. *Id.* at 323-326.

On April 25, 2007, Petitioner pleaded no contest to the charges and admitted the allegations in both cases. Resp't Exs. 1A at 126-127; 1B at 333.

On December 18, 2007, the trial court sentenced Petitioner in both cases to state prison for a total determinate term of 36 years and 8 months, with a consecutive indeterminate term of 25-years-to-life. Resp't Exs. 1A at 134-137; 2C at 87-89.

On December 20, 2007, Petitioner filed a notice of appeal in both cases.[2] Resp't Exs. 1A at 138; 1B at 441. The cases were considered together on appeal in California Court of Appeal case number H032441. Resp't Ex. 8 at 1. On February 18, 2009, the state appellate court struck one of the serious prior felony convictions in case number CC591335, thereby reducing the

---

[2] In February and August 2008, in case number CC629776, Petitioner filed a *pro se* request to recall his sentence and a *pro se* motion for modification of his sentence in the trial court. Resp't Ex. 14 at 1, 3-4. He later filed a separate notice of appeal from the trial court's denial of his motion on September 22, 2008, *id.* at 39, which was considered in California Court of Appeal case number H033406. On October 29, 2008, appointed counsel on appeal filed a brief pursuant to *People v. Wende*, 25 Cal. 3d 436 (1979), indicating that counsel could find no arguable issues for appeal. Resp't Ex. 15. On February 18, 2009, the California Court of Appeal independently reviewed the record, found no arguable issues for appeal, and affirmed the judgment. Resp't Ex. 16. On March 27, 2009, Petitioner filed a petition for review in California Supreme Court case number S171539, which was denied on April 29, 2009. Resp't Exs. 17, 18.

sentence in that case to seven years and eight months; struck one of the five-year serious prior felony convictions in case number CC629776, thereby reducing the determinate sentence in that case to 19 years; and reduced the restitution and parole revocation fines in both cases to $10,000 each. *See id.* The state appellate court otherwise affirmed the judgments. *See id.*

On March 23, 2009, the People filed a petition for review in California Supreme Court case number S171429. Resp't Ex. 9. On May 20, 2010, the California Supreme Court transferred the case back to the state appellate court with directions to vacate its decision and reconsider the cause in light of *People v. Soria*, 48 Cal. 4th 58 (2010). Resp't Ex. 10.

On July 28, 2010, the state appellate court withdrew that part of its previous opinion pertaining to the restitution and parole revocation fines, left intact its decision regarding the sentence reductions, and otherwise affirmed the judgments. Resp't Ex. 11.

On August 29, 2010, Petitioner filed a petition for review in California Supreme Court case number S186045, which was denied on October 13, 2010. Resp't Exs. 12, 13.

On April 5, 2011, the trial court resentenced Petitioner in accordance with the opinion of the California Court of Appeal. Resp't Ex. 19.

On April 20, 2011, Petitioner filed a notice of appeal in case number H036807, but he later voluntarily abandoned the appeal (in a notice filed on July 14, 2011). Resp't Exs. 20, 21.

On July 14, 2011, the state appellate court dismissed the appeal and issued a remittitur. Resp't Ex. 21.

On March 12, 2012,[3] Petitioner filed a petition for writ of habeas corpus in the Santa Clara County Superior Court case number CC591335/CC629776, which was denied on June 4, 2012. Resp't Exs. 22, 23.

---

[3] According to the mailbox rule, a *pro se* federal or state habeas petition is deemed filed on the date it is delivered to prison authorities for mailing. *See Saffold v. Newland*, 250 F.3d 1262, 1268 (9th Cir. 2001), *vacated and remanded on other grounds*, *Carey v. Saffold*, 536 U.S. 214 (2002) (holding that a federal or state habeas petition is deemed filed on the date the prisoner submits it to prison authorities for filing, rather than on the date it is received by the court). A proof of service is sufficient to show "delivery" to prison officials. The Court assumes that Petitioner delivered his state and federal petitions to prison officials on the same dates the proofs of service were signed or the same dates the petitions were signed (if no proofs of service included). *See Koch v. Ricketts*, 68 F.3d 1191, 1193 (9th Cir. 1995) (petitioner assumes risk of proving date of mailing).

On June 25, 2012,[4] Petitioner filed a petition for writ of habeas corpus in California Court of Appeal case number H038465, which was denied on July 20, 2012. Resp't Exs. 24, 25.

On August 5, 2012, Petitioner filed a petition for writ of habeas corpus in California Supreme Court case number S204744, which was denied on October 17, 2012, with a citation to *People v. Duvall*, 9 Cal. 4th 464, 474 (1995). Resp't Exs. 26, 27.

On November 29, 2012, Petitioner filed the original petition for writ of habeas corpus in this Court. Dkt. 1. In his original petition, Petitioner raised the following three ineffective assistance of counsel claims, namely for: (1) failing to object to "over enhancements which led to an illegal sentence"; (2) failing to object to blood alcohol evidence; and (3) advising him that if he pled no contest, he "would receive a sentence of 6-16 years" at a *Romero*[5] hearing, and then failing to comply with Petitioner's request to withdraw his plea before the *Romero* hearing. *Id.* at 6.

On January 30, 2013, the Court issued an order directing Respondent to show cause why the petition should not be granted. Dkt. 5.

On June 19, 2013, after being granted an extension of time to do so, Respondent filed an answer. Dkts. 11, 11-1, 12. On August 23, 2013, Petitioner filed a traverse. Dkt. 16.

On or about April 11, 2014, Petitioner filed a petition for writ of habeas corpus in Santa Clara County Superior Court case number CC591335/CC629776, "[i]n regards to the [T]here Strikes Law [R]eform [A]ct of 2012." Dkt. 42 at 2. In his petition, Petitioner argued "that his strike priors d[id] not constitute . . . a serious or violent felony as a strike prior and should be stricken." *Id.* On April 30, 2014, the state superior court denied the petition. *Id.*

On June 18, 2014, Petitioner appealed the superior court's denial of his habeas petition to the California Court of Appeal in case number H041112, and was appointed counsel on appeal.

---

[4] The record does not include a copy of the state habeas petition filed in the state appellate court; therefore, the Court is unable to determine Petitioner's constructive filing date, i.e., the date the petition was signed (in order to determine if the mailbox rule applies). However, the actual date of mailing is irrelevant, as the parties do not dispute that Petitioner is entitled to continuous tolling for the entire time his first round of state habeas petitions were pending.

[5] *People v. Superior Court (Romero)*, 13 Cal. 3d 497 (1996).

4

*Id.* at 2-3; Resp't Ex. 28. On May 28, 2015, after the case was fully briefed, Petitioner filed a motion requesting that the appeal be dismissed. Resp't Ex. 28. On June 2, 2015, the state appellate court granted Petitioner's request and dismissed the case. *Id.*

On November 14, 2014, Petitioner filed a motion in this Court requesting a stay and abeyance while he exhausted his state court remedies with respect to new sentencing claims. Dkt. 42. On July 1, 2015, the Court granted Petitioner's motion for a stay and abeyance. Dkt. 45.

On November 25, 2014, Petitioner filed a petition for writ of habeas corpus in Santa Clara County Superior Court case number CC591335/CC629776, challenging a prior strike conviction pursuant to *Descamps v. United States*, 133 S. Ct. 2276 (2013). Resp't Ex. 29 at 7; *see also id.*, Exhibit F. On September 8, 2015, the state superior court denied the petition. Resp't Ex. 29 at 7; *see also id.*

On September 30, 2015, Petitioner filed a petition for writ of habeas corpus in California Court of Appeal case number H042817. Exs. 29, 30. On October 20, 2015, the court denied the petition. Resp't Ex. 30.

On October 29, 2015, Petitioner filed a petition for review in California Supreme Court case number S230271, challenging the court of appeal's denial of his petition writ of habeas corpus. Resp't Exs. 31, 32. On January 13, 2016, the state supreme court denied the petition for review. Resp't Exs. 32, 33.

On February 8, 2016, Petitioner filed a petition for writ of certiorari in United States Supreme Court case number 15-8138. Resp't Ex. 34. On April 18, 2016, the Supreme Court denied the petition. *Id.*

On March 18, 2016, Petitioner filed a motion in this Court requesting leave to file an amended petition for writ of habeas corpus. Dkt. 51. And, on May 20, 2016, Petitioner filed a second motion requesting leave to file an amended petition for writ of habeas corpus. Dkt. 55. In his amended petition dated May 13, 2016, Petitioner raises the same three claims from his original petition as well as the following six additional claims, namely: (4) his prior conviction for brandishing a weapon was not categorically a strike, and therefore was improperly used to enhance his sentence to a life term; (5) he is entitled to the relief requested in claim 4 despite

admitting the strike prior; (6) prosecutorial misconduct for knowingly pleading false enhancements and strikes that were not categorically strikes; (7) denial of prison conduct credits violates the Due Process Clause; (8) his prison gang validation violates the Due Process Clause, the Ex Post Facto Clause, and the Double Jeopardy Clause; and (9) ineffective assistance of counsel for failing to advise him that a "gang enhancement prior criminal conviction" would lead to validation as a prison gang associate and deprivation of prison conduct credits. Dkt. 59 at 6-8.

On June 17, 2016, the Court lifted the stay, granted Petitioner's request to file the amended petition attached to his May 20, 2016 motion, and ordered Respondent to file a supplemental answer addressing the newly-exhausted claims contained in the amended petition. Dkt. 58.

On October 13, 2016, in lieu of filing an answer as directed, Respondent has filed the instant motion to dismiss. Dkt. 65. Respondent argues that the six newly-added claims in the amended petition are untimely. *See id.* Petitioner has filed an opposition. Dkt. 70. Respondent has filed a reply. Dkt. 71. Petitioner then filed an unsolicited surreply to Respondent's reply. Dkt. 72.

## II. DISCUSSION

### A. Overview

AEDPA, effective April 24, 1996, imposes a limitations period on petitions for a writ of habeas corpus filed by state prisoners. In prisoner actions challenging non-capital state convictions or sentences, a habeas petition must be filed within one year of, inter alia, the date the judgment became final after the conclusion of direct review or the time passed for seeking direct review. 28 U.S.C. § 2244(d)(1).

The one-year period is calculated according to the general rule for counting time in federal courts, Rule 6(a) of the Federal Rules of Civil Procedure. *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). That is, "the day of the act, event, or default from which the designated period of time begins to run shall not be included" in the one-year limitations period. Fed. R. Civ. P. 6(a). This is referred to as the "anniversary method" because, absent any tolling, the expiration date of the limitations period will be the same date as the triggering event in the following year.

*Patterson*, 251 F.3d at 1246.

In the present case, Petitioner filed an appeal after he was resentenced, but then voluntarily abandoned it. Dkt. 21. On July 14, 2011, the California Court of Appeal dismissed the appeal and issued a remittitur. *Id.*

California Rule of Court 8.308 provides, "[A] notice of appeal . . . must be filed within 60 days after the rendition of the judgment or the making of the order being appealed." Cal. R. Ct. 8.308(a). An appellant may abandon an appeal at any time by filing an abandonment of the appeal. *Id.* at 8.316(a). If an appellant abandons the appeal, "[t]he reviewing court may dismiss the appeal and direct immediate issuance of the remittitur." *Id.* at 8.316(b)(2). An appeal that is dismissed "on request or stipulation" becomes final upon the filing of that dismissal. *Id.* at 8.264(b)(2).

Once the court of appeal decision becomes final, a petition for review with the California Supreme Court must be filed within ten days. Cal. R. Ct. 8.500(e)(1). The Court notes that Petitioner had abandoned his appeal and did not file a petition for review in the instant action. However, out of an abundance of caution, the Court will consider the 10-day time frame during which Petitioner could have reconsidered the abandonment of his appeal and could have filed a petition for review. Thus, in the instant action, the ten-day period commenced on July 14, 2011, and expired on July 25, 2011,[6] without the filing of a petition for review. The limitations period began to run on July 25, 2011. Petitioner thus had until July 25, 2012,[7] to file his federal petition, absent tolling. *See Patterson*, 251 F.3d at 1246.

Petitioner did not file the original federal petition (raising claims 1-3) in this case until November 29, 2012, more than four months after the limitations period had expired. Furthermore, his amended petition (raising claims 4-9 for the first time) was signed and dated on May 13, 2016 and filed on May 20, 2016, almost four years after the deadline. Both petitions are therefore

---

[6] The Court notes that July 24, 2011 fell on a Sunday. Therefore, the filing deadline would have been the next working day—July 25, 2011.

[7] The Court notes that Respondent did not consider the 10-day time frame during which Petitioner could have filed a petition for review, and incorrectly indicated that Petitioner only had until July 14, 2012 to file a timely federal petition. *See* Dkt. 65 at 11.

7

untimely unless Petitioner can show that he is entitled to tolling.

**B. Tolling**

**1. Statutory Tolling**

The one-year statute of limitations is tolled under section 2244(d)(2) for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). Tolling applies to one full round of collateral review. *Carey v. Saffold*, 536 U.S. 214, 223 (2002). The limitations period is also tolled during the time between a lower state court's decision and the filing of a notice of appeal to a higher state court. *Id.* In California, where prisoners generally use the State's original writ system, this means that the limitations period remains tolled during the intervals between a state court's disposition of an original state habeas petition and the filing of the next original state habeas petition in a higher court, provided the prisoner did not delay unreasonably in seeking review in the higher court. *Id.* at 220-25.

As mentioned above, the limitations period started to run on July 25, 2011, and Petitioner filed his first state habeas petition in the state superior court 231 days later—on March 12, 2012, *see* Resp't Ex. 22. Because Petitioner initiated his first round of state habeas petitions during AEDPA's limitations period, and did not unreasonable delay between those filings, he is entitled to statutory tolling for the entire time period those petitions were pending—from March 12, 2012 to October 17, 2012, the date the state supreme court denied his state habeas petition, *see* Resp't Ex. 27. When Petitioner filed his first state habeas petition on March 12, 2012, he had 134 days[8] (365 days minus 231 days) of the limitations period remaining. When the clock resumed on October 18, 2012, Petitioner had 134 more days or up to and until March 1, 2013,[9] to file a timely federal habeas petition.

---

[8] Respondent incorrectly calculated that only "124 days" of the limitations period remained (as opposed to 134 days), *see* Dkt. 65 at 11, because Respondent did not consider the 10-day time frame during which Petitioner could have filed a petition for review, *see* footnote 6.

[9] Again, as mentioned above, Respondent did not consider the 10-day time frame during which Petitioner could have filed a petition for review, *see* footnote 6, and thus Respondent incorrectly stated that Petitioner only had until "February 19, 2013" to file a timely federal habeas petition after the limitations period began to run on October 18, 2012, *see* Dkt. 65 at 11.

8

Petitioner is not entitled to statutory tolling for the time period any of his 2014 or 2015 state habeas petitions were pending because they were filed after the limitations period had expired on March 1, 2013. "[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed." *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003); *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D. N.Y. 1998) ("The tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."). Nor is Petitioner entitled to continuous statutory tolling between his first round of state habeas petitions and his subsequent rounds of state habeas petitions. *See Biggs v. Duncan*, 339 F.3d 1045, 1048 (9th Cir. 2003) (no tolling for the period between unrelated sets of state habeas corpus actions).

Petitioner's original federal petition in this case was filed on November 29, 2012, which was *before* the aforementioned statutorily-tolled filing deadline of the March 1, 2013. Respondent does not dispute that claims 1, 2 and 3 (the only claims in the original federal petition) are timely. Instead, Respondent argues that the six claims in the amended petition are untimely because the amended petition was filed on May 13, 2016, over three years after the March 1, 2013 deadline. The timely filing of Petitioner's original petition does not toll AEDPA's limitations period with respect to the new claims in the amended petition. *Duncan v. Walker*, 533 U.S. 167, 180-82 (2001) (petitioner not entitled to tolling for time his first federal filing was pending). Consequently, this Court agrees with Respondent and finds that statutory tolling does not save claims 4-9 in the amended petition from being found to be untimely.

### 2. Equitable Tolling and Actual Innocence Exception

Aside from statutory tolling, the AEDPA limitations period may be equitably tolled "if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *See Calderon v. United States Dist. Court (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997) (citation omitted), *overruled in part on other grounds by Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998) (en banc). The prisoner "must show that the 'extraordinary

9

circumstances' were the cause of his untimeliness." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (citations omitted). He must also show that he has been "pursuing his rights diligently" and that "some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Here, Petitioner seeks equitable tolling as to claims 4 and 5 based on his limited law library access which delayed his discovery of *Descamps*. Dkt. 70 at 12-15. Claims 4 and 5 of the amended petition appear to be based on *Descamps v. United States*, 133 S. Ct. 2276 (2013), which was decided on June 20, 2013. "[O]rdinary prison limitations on . . . access to the law library and copier" do not constitute extraordinary circumstances or make it impossible to file on time. *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009) (internal quotation marks and citations omitted); *see, e.g., Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010) (per curiam) (prisoner's *pro se* status, law library missing a "handful" of reporter volumes, and reliance on inmate helpers who were transferred or too busy to attend to his petitions are not extraordinary circumstances "given the vicissitudes of prison life"). Further, in the instant action, there is no evidence that such controls actually impeded Petitioner's legal research capabilities, given his ability to file his traverse on August 23, 2013, which is *two months* after *Descamps* was decided. *See* Dkt. 16. Moreover, in 2014 and 2015, Petitioner was able to file various pleadings in the state courts. *See* Dkt. 42 at 2; Resp't Exs. 28, 42, 29 at 7 (Ex. F), 30-32. Additionally, Petitioner himself alleges that, before he found out about *Descamps*, he was able to present the same legal arguments to the state court. *See* Dkt. 70 at 13 ("On or around April 14, 2014 Petitioner filed a state habeas corpus arguing that his priors were not actual strikes[,] the same arguments presented in *Descamps* . . . ."); *see also Lewis v. Casey*, 518 U.S. 343, 360 (1996) ("the Constitution does not require that prisoners (literate or illiterate) be able to conduct generalized research, but only that they be able to present their grievances to the courts—a more limited capability that can be produced by a much more limited degree of legal assistance"). Thus, the Court finds that Petitioner's allegations fail to establish that his limited access to the prison law library constituted an extraordinary circumstance that stood in his way and prevented the timely filing of claims 4 and 5. In addition, Petitioner neither alleges nor proves that he acted with diligence in pursuing claims

10

4 and 5. By his own admission, he was able to raise the same legal arguments asserted in *Descamps* in his April 2014 state habeas petition. *See* Dkt. 70 at 13. Petitioner does not explain why he could not have raised those same arguments in one of his earlier state habeas petitions, and included the claims in his original federal habeas petition. *See Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006) (the obligation to act diligently does not pertain solely to the filing of the federal habeas petition, but exists during the time period that Petitioner is exhausting state court remedies as well). Such inaction on Petitioner's part indicates that it was his lack of diligence as opposed to his limited access to the law library that was the cause of his untimeliness with respect to claims 4 and 5.

Furthermore, Petitioner does not argue that there is any other basis for equitable tolling or allege any other facts showing that equitable tolling applies to his newly-alleged claims (including claims 6-9 from his amended petition), nor is any basis therefor apparent from the record. As such, the Court finds no basis to equitably toll the statute of limitations for claims 4-9. *See Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002) (prisoner "bears the burden of showing that this extraordinary exclusion should apply to him").

Instead, Petitioner argues that the late filing of his newly-alleged *sentencing* claims should be excused under the "actual innocence" exception of *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013). Dkt. 70 at 16. He asserts that "*Descamps* makes Petitioner innocent of his priors being strikes when they were not category[ically] strikes . . . ." *Id.* A federal court may reach the merits of claims that are untimely under AEDPA if there is "cause and prejudice" for the untimeliness or if failure to hear the claims would constitute a "miscarriage of justice." *McQuiggin*, 133 S. Ct. at 1931-32. However, Petitioner does not argue that cause and prejudice exist. *See* Dkt. 70. The Supreme Court limits the "miscarriage of justice" exception to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). The required evidence must create a colorable claim of actual innocence, that the petitioner is innocent of the charge for which he is incarcerated, as opposed to legal innocence as a result of legal error. *Id.* at 321. Petitioner cites no authority, nor does there appear to be any, that a miscarriage of justice occurs when a state

11

prisoner's *sentence* violates that state's laws. In any event, Petitioner challenges his sentence on *legal* and not *factual* grounds. *See* Dkt. 70 at 16. Legal innocence—even if correct—is not a miscarriage of justice that precludes AEDPA's time bar, which requires a showing of factual innocence based upon new evidence. *See Bousley v. United States*, 523 U.S. 614, 624 (1998) (holding that "'actual innocence' means factual innocence, not mere legal insufficiency."); *Morales v. Ornoski*, 439 F.3d 529, 533 (9th Cir. 2006) (same). The Court thus finds no merit to Petitioner's argument that his newly-alleged sentencing claims are timely under the "actual innocence" exception.

In sum, the Court has determined above that neither statutory nor equitable tolling saves claims 4-9 from being untimely.[10][11] Nor is Petitioner entitled to review of his newly-alleged sentencing claims under the actual innocence exception. Therefore, as explained below, unless claims 4-9 in the amended petition "relate back" to the claims (claims 1-3) in the original petition, they must be dismissed as untimely.

## C. Relation Back

Pleading amendments made after AEDPA's one-year limitation period has run relate back

---

[10] The Court also finds that Petitioner is not entitled to a delayed commencement of the limitations period for claims 4 and 5 pursuant to either 28 U.S.C. § 2244(d)(1)(C) (limitations period runs from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"), or 28 U.S.C. § 2244(d)(1)(D) (limitations period runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence"). First, as to his argument relating to 28 U.S.C. § 2244(d)(1)(C), *see* Dkt. 70 at 12-14, the Ninth Circuit has expressly held that *Descamps* did not announce a new constitutional rule, *see Ezell v. United States*, 778 F.3d 762, 765-67 (9th Cir. 2015). Second, while Petitioner claims that he is entitled to a delayed commencement pursuant to 28 U.S.C. § 2244(d)(1)(D) because "there was no way [he] could have found out about the *Descamps* case until [his] counsel advised him of it." *See* Dkt. 70 at 14-15. However, the discovery of the *factual* predicate is not the same as Petitioner's recognition of the *legal significance* of facts. *See Hasan v. Galaza*, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001). In addition, a court's change or clarification of law does not amount to a factual predicate; otherwise "the term 'factual' would be meaningless." *Shannon v. Newland*, 410 F.3d 1083, 1088 (9th Cir. 2005).

[11] The Court also finds no merit to Petitioner's contention that Claims 7 and 8 qualify for a delayed commencement of the limitations period pursuant to 28 U.S.C. § 2244(d)(1)(C), because they are based on the Ninth Circuit case of *Hinojosa v. Davey*, 803 F.3d 412 (9th Cir. 2015), *rev'd by Kernan v. Hinojosa*, 136 S. Ct. 1603 (2016). *See* Dkt. 70 at 19-21. However, 28 U.S.C. § 2244(d)(1)(C) applies only with respect to constitutional rights newly recognized by the *Supreme Court*, not the circuit courts of appeal. *See* 28 U.S.C. § 2244(d)(1)(C).

to the date of the original pleading if the original and amended pleadings "'ar[i]se out of the conduct, transaction, or occurrence.'" *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (quoting Fed. R. Civ. P. 15(c)(2)). "An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. Only if the original and amended petition state claims that are tied to a common core of operative facts will relation back be in order. *Id.* at 664.

In *Mayle v. Felix*, the Supreme Court determined that the newly-added untimely claim—that Felix's own pretrial statements were inadmissible under the Fifth Amendment because they were coerced—did not relate back to the timely claim—that a witness's statements violated the Confrontation Clause of the Sixth Amendment. *See* 545 U.S. at 655-667. The Supreme Court found that the two claims arose from "separate congeries of facts," and thus amounted to separate "occurrences" for purposes of Rule 15(c)(2). *Id.* at 661. Accordingly, the Supreme Court reversed the Ninth Circuit's judgment to the extent that it allowed relation back of Felix's untimely Fifth Amendment claim. *Id.* at 654. Here, a comparison of the claims contained in the original petition[12] with the newly-added claims in the amended petition[13] reveals that the new claims do not relate back to the original claims.

Claims 4 and 5 do not relate back to any of the claims in the original petition. Claims 4

---

[12] For ease of reference, the Court once again lists the claims. In his original petition, Petitioner raised the following three ineffective assistance of counsel claims: (1) failing to object to "over enhancements which led to an illegal sentence"; (2) failing to object to blood alcohol evidence; and (3) advising him that if he pled no contest, he "would receive a sentence of 6-16 years" at a *Romero* hearing, and then failing to comply with Petitioner's request to withdraw his plea before the *Romero* hearing. Dkt. 1 at 6.

[13] In his amended petition, Petitioner raises the same three claims from his original petition as well as the following six additional claims: (4) his prior conviction for brandishing a weapon was not categorically a strike, and therefore was improperly used to enhance his sentence to a life term; (5) he is entitled to the relief requested in claim 4 despite admitting the strike prior; (6) prosecutorial misconduct for knowingly pleading false enhancements and strikes that were not categorically strikes; (7) denial of prison conduct credits violates the Due Process Clause; (8) his prison gang validation violates the Due Process Clause, the Ex Post Facto Clause, and the Double Jeopardy Clause; and (9) ineffective assistance of counsel for failing to advise him that a "gang enhancement prior criminal conviction" would lead to validation as a prison gang associate and deprivation of prison conduct credits. Dkt. 59 at 6-8.

13

and 5 assert sentencing error, while claims 1, 2, and 3 assert the ineffectiveness of trial counsel. Additionally, claims 4 and 5 rely on completely "separate congeries of facts," including whether one of Petitioner's prior convictions is categorically a strike within the meaning of *Descamps v. United States*, 133 S. Ct. 2276 (2013), and whether the trial court properly relied on Petitioner's admission of the strike in enhancing his sentence to a life term. Therefore, claims 4 and 5 are not tied to the "common core of operative facts" that form the three claims in the original petition, and thus do not relate back to those claims. *See Mayle*, 545 U.S. at 650, 664.

Claim 6 also does not relate back to any of the claims in the original petition. Claim 6, a prosecutorial misconduct claim, differs in type from the claims relating to the ineffectiveness of trial counsel alleged in claims 1, 2, and 3. Additionally, claim 6 is based on a separate set of facts. Claim 6 concerns whether the prosecutor knowingly pleaded false enhancements and prior convictions that were not categorically strikes. Even assuming the "false enhancements" alleged in claim 6 are the same "overenhancements" alleged in claim 1, that is not enough to tie the two claims to a "common core of operative facts." Rather, the focus of claim 6 is on whether the prosecutor committed misconduct by charging the enhancements in the information, while the focus of claim 1 is on whether counsel was ineffective for failing to object to the enhancements at sentencing. In other words, the core facts underlying the legal theory of claim 6 are different in type from the core facts underlying the legal theory of claim 1. *See Schneider v. McDaniel*, 674 F.3d 1144, 1151 (9th Cir. 2012) (new claim did not relate back to original claim even though both claims shared the common fact of codefendant's testimony because core facts underlying the theories of the two claims were "different in type," with one focusing on trial court's error, and other focusing on trial counsel's error). Not only are the core facts of each claim different in type, they are also separated in time: claim 6 focuses on the information stage of the proceedings, while claim 1 focuses on the sentencing stage of proceedings. *See Hebner v. McGrath*, 543 F.3d 1133, 1138-39 (9th Cir. 2008) (claims that shared the common fact of propensity evidence nonetheless were "separated in time and type," given that one claim focused on the admission of the evidence at trial, while the other focused on an instruction given to the jury after the close of evidence). Therefore, claim 6 is not tied to the "common core of operative facts" that forms the three claims

1  in the original petition, and thus it does not relate back to those claims. *See Mayle*, 545 U.S. at
2  650, 664.

3  Claims 7 and 8 also do not relate back to the original three claims in the petition. Claims 7
4  and 8 raise concern Petitioner's validation by prison authorities as a gang associate and the
5  resulting denial of prison conduct credits based on that validation. The facts underlying these
6  claims differ in both time and type from the facts underlying the ineffective assistance of counsel
7  claims raised in claims 1, 2, and 3. Claims 7 and 8 concern Petitioner's time in prison after being
8  convicted and prison officials' treatment of him, whereas claims 1, 2, and 3 concern Petitioner's
9  pretrial and sentencing proceedings and trial counsel's effectiveness at those proceedings. Given
10 that claims 7 and 8 are not tied to the "common core of operative facts" that form the three claims
11 in the original petition, these claims do not relate back to claims 1, 2, or 3. *See Mayle*, 545 U.S. at
12 650, 664.

13 Finally, claim 9 alleges the ineffective assistance of counsel for failing to advise Petitioner
14 that a "gang enhancement prior criminal conviction" would lead to deprivation of prison conduct
15 credits and validation as a prison gang associate. While claims 1, 2, and 3 also allege various
16 instances of the ineffectiveness of counsel, that alone is not enough to tie the claims to "a common
17 core of operative facts." *See United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (finding that
18 a federal habeas petitioner does not show relation back "merely by raising some type of ineffective
19 assistance in the original petition, and then amending the petition to assert another ineffective
20 assistance claim based upon an entirely distinct type of attorney misfeasance"); *United States v.
21 Gonzalez*, 592 F.3d 675, 679 (5th Cir. 2009) ("New claims of ineffective assistance of counsel do
22 not automatically relate back to prior ineffective assistance claims simply because they violate the
23 same constitutional provision."). And, while claim 3 involves another alleged instance of
24 misadvisement by counsel, the facts underlying that misadvisement are completely different from
25 the facts underlying the misadvisement alleged in claim 9. Claim 3 focuses on what counsel
26 advised Petitioner as to what sentence he would receive after a *Romero* hearing, while claim 9
27 focuses on what counsel advised Petitioner about the collateral consequences of his admitting a
28 prior gang enhancement. The facts underlying the claims therefore differ both in type and time.

15

Claim 9 is not tied to the "common core of operative facts" that forms the three claims in the original petition, and thus it does not relate back to those claims. *See Mayle*, 545 U.S. at 650, 664.

To summarize, the Court finds that claims 4-9 do not relate back and are untimely, and as such, Respondent's motion to dismiss these claims is GRANTED.

### III. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Petitioner's "Motion for Request for Update and Case Inquiry and Request for Extension of Time to Reply to Any Court Orders or Motions Filed, If Necessary" is DENIED as unnecessary. Dkt. 73.

2. Respondent's motion to dismiss the new claims in the amended petition (claims 4-9) is GRANTED, and these claims are DISMISSED with prejudice. Dkt. 65.

3. The Court will resolve remaining claims 1-3 in a separate written Order.

4. This Order terminates Docket Nos. 65 and 73.

IT IS SO ORDERED.

Dated: May 10, 2017

_____
YVONNE GONZALEZ ROGERS
United States District Judge